Ladies and gentlemen, we have six cases on the calendar this morning. Three patent cases, a case from the Court of International Trade, and two cases from the Court of Federal Claims, which are pro se and being submitted on the briefs, and will therefore not be argued. The first case is MONDIS TECHNOLOGY v. INNOLUX & HONHAI PRECISION 2013-11-78. Mr. Weed, is it? Yes, Your Honor. Please proceed. May it please the Court, Peter Weed for Honhai Precision Industry. The District Court improperly enhanced the ongoing royalty rate in this case after conducting a willfulness analysis. Honhai sought to correct this error by its Rule 60b motion, which the District Court denied, and therefore this appeal followed. The District Court erred in its enhancement because enhancement is a punitive measure while an ongoing royalty should be compensatory. Well, if we conclude that INNOLUX waived that argument below, is it your view that your client is not bombed by the waiver below and he can raise that here, or is that a problem for you? I would first disagree that INNOLUX waived it, but secondly I would say that Honhai is not bound by that because they were not a party to the underlying litigation where the ongoing royalty was set, and that's made clear in the District Court's order at JA 5149 where it specifically said only MONDIS and INNOLUX would be parties to that case. So to apply a waiver to Honhai, which was not a party to that case, had no knowledge of what was going on in that case, I think would be inequitable. That's true even though the successor and the signs are bound? You're not disputing that, and therefore even if the successors and the signs are bound, you say that they get to re-litigate all of the substantive legal issues? No, Your Honor, I wouldn't say that they get to re-litigate all of the substantive issues. However, if that initial decision was in error and was inequitable and did not follow the principles of equity, then I believe a successor and a sign can... Even if that argument was never made below? And the District Court didn't have the benefit of any of that argument, the party didn't raise it? Yes, certainly, I believe this Court can still correct that decision even if it wasn't raised below. For example, in the Interactive Gift Express case, the Court went through the various factors that might lead this Court to consider an issue even if it weren't raised below. And again, I do believe it was, and it was certainly raised by Honhai below. So the District Court, in deciding the Rule 60B motion, or denying Honhai's Rule 60B motion, had the benefit of that argument. How is it supposed to work, and I guess why should we not worry about this? The general risk that a defendant loses on an issue, or maybe waives the issue, I'm not sure it makes any difference, sells its assets, its business, its operating business, to a company that maybe it's just created. We now have a successor in interest. And a successor in interest was obviously not originally a party. The successor in interest gets to re-litigate issues that could have been or even were litigated by the original party? What kind of precedent... I understand that everybody, including the original party, can make arguments that circumstances have changed under 60B, but that's not, with one exception, the argument you're making. So how is it that a successor in interest is not very broadly bound by the resolution or waiver of any issue that was litigated or could have been litigated on the circumstances at the time? Your Honor, I think it's important to look at the specific circumstances of this case. I agree there may be cases in which it would certainly make sense for a successor in interest to be bound. In this case, Hon Hai didn't purchase the entire business. It purchased only some of the assets. But you have conceded that you were a successor in interest with a full-stop, period. I assume, therefore, any rules that apply to successors in interest with respect to standing in the shoes of their predecessor apply to you. I would also point out that... Is that a yes to Judge Delanco's claim? I'm not sure I could say yes to all rules. In particular, what I think makes this a little bit different is that at the time Hon Hai admitted or decided not to contest being the successor and raised these issues before the district court, the interlock was still appealing and did still have these issues, were still open before this court. So this is not a case where you have a party that has lost before this court and decides to raise... But when you're buying whatever it was that you bought that now by concession made you a successor in interest, you were buying under whatever agreements you had with interlocks to either bind them to pursue the issues that they were at that moment still pursuing or not to settle them or whatever. You took whatever risk there was that interlocks could do with the litigation what it, in fact, did with the litigation. I think that might be a correct statement, Your Honor. If it were a situation where the purchaser had reason to believe that they would be a successor and therefore be bound by that decision, if you look at the timeline in this case, there was not a court order that bound successors in assigns until April 30th. That was after Hon Hai had purchased whatever assets that it purchased from interlocks and had entered the market. So under these circumstances, I think it's unreasonable to, in hindsight, say Hon Hai should have known that there was a fancy disorder that it might be bound by and that therefore should have proceeded accordingly and protected itself in its arrangements with interlocks. Is it your argument not just that Waverly should necessarily apply in those sorts of things but that your client, because he's a successor and didn't actually do it, have a hands-on below that you should not be bound by the finding of willfulness based on something like copying them? Obviously, you weren't in the room when that happened since you were the successor. Is it your view that you should not be bound because of that to any previous willfulness finding? We do make the argument, Your Honor, that a willfulness analysis has to be done on an individual basis because it goes to the party's state of mind, intent, and culpability. And so I do believe in a successor, and particularly under these circumstances, it would be inappropriate to carry over that willfulness assessment. Do you have any cases to support that proposition? No, Your Honor, I'm not aware of any cases. This is, I believe, a somewhat unique circumstance in terms of the way that both the litigation and the business activities have played out. Moving on with the substantive issue, namely willfulness, and in particular the issue of enhancement, which I think is an important distinction to make, that willfulness and enhancement are two separate issues. So in your view, if the district court had considered the willfulness or just the fact that you've already prevailed on the case and if you go into court you might get a willfulness or tripling of damages, would that appropriately be part of Georgia-specific factors? Is it just the problem to do it under Meade versus Georgia-specific, or are you suggesting that that cannot be a consideration at all? I would suggest that enhancement would not be a consideration at all, because that enhancement, as this Court has said, and would serve in tentonics, serves solely a punitive purpose. And in setting an ongoing royalty, and in particular using the Georgia-specific factors, that is only intended to be compensatory. But could you not consider it as a factor in the analysis of whether or not this was compensatory? Certainly Mondes makes that argument. I don't believe that a party would necessarily be facing enhancement in a second litigation where you have a situation where a court has said that a patentee is not entitled to absolutely exclude the party, that particular party, from practicing the invention, but is only entitled to compensation for the use of it. That's a very odd argument, I must say. I wasn't buying it at all, so I guess I might ask you, since you've made it again, whether you have any cases to cite for that proposition, that they wouldn't use any willfulness component in the subsequent litigation because they would just look at the fact that, well, the district court didn't impose a permanent injunction, really? I would point, Your Honor, to the lower court opinion in the active video case in which the district court said willfulness would be improper to consider because the party is acting under a court order, or essentially with the benefit of the court saying you can continue this activity provided you pay what the court has determined to be a reasonable amount. Might it make a difference what the reason is that a district court in a particular case decides not to issue a conduct-stopping injunction? If it's a case in which the conduct, for example, it's infringing, but it is the supplying of a medical product that nobody else is supplying, including the patentee, and for which there are no good substitutes, then the district court can say, it would be positively harmful for you to stop this. Please don't. I won't make you stop. And then the ongoing royalty would just be market value. But if the reason is one of the first two, essentially the same factors of eBay, money is good enough, that doesn't place a kind of imprimatur on the conduct of please continue it. It's just you can if you want, but that's just because the plaintiff can be made whole in damages. Yes, Your Honor, I think it does, and I think that would go not necessarily to whether willfulness should be considered, but it will go to the changed circumstances of the party. So, for example, in the Bard case, where you did have competitors making a medical device, and that was part of the court's consideration for not imposing the injunction in that case, the court did take into consideration the fact that you would otherwise have competitors who had lost profits. And so there, there was a change in the party situation, and therefore a royalty higher than the one awarded by the jury was appropriate. In situations where I think it's the first two factors, say, and in this case where you solely have a licensing entity, there's not going to necessarily be a change in the relationship of the parties, or in this case, not a substantial change pre-litigation versus post-litigation, and therefore you would have less of a factor, or less of a change in the royalty rate. In either situation, though, I don't think willfulness, and in particular the Reed factors, are the appropriate way to approach it. Mr. Reed, you wanted to save some time? You have about two and a half minutes left. I'd like to reserve it if the court has no further questions. We will do that. Thank you. Mr. Black. Thank you. Please, the court. This case was tried to the jury in June of 2011. High High was at the trial and settled on a Sunday before the jury came back on Monday morning. But that was with respect to the televisions, right? With respect to the televisions. That was the same product that I was dealing with here, right? That is correct. Can I ask you, I mean, I know abusive discretion is the standard here, correct? Yes, sir. And it's quite a deferential standard. But how were we to apply an abusive discretion review when the district court here didn't give us any reasons? Go ahead, sir. Well, the district court did provide reasons for the underlying judgment. There was a lengthy opinion with respect to how the Georgia Pacific factors and the Reed factors were applied by Judge Ward, which was issued on September 30th, 2011. There was also a lengthy opinion that went along with the final judgment stating why the district court was making the judgment binding on successors and assigns, which was an issue that had been litigated. So the district court's reasons for the underlying legal decisions that were made in the case were spelled out in those decisions. So we shouldn't rely on other things. I thought you were arguing, maybe I'm not right, that there were other reasons that he did not abuse discretion. The timing, the timelines, and so forth. So you're telling us now that we should not rely on those? No, Your Honor, all I'm saying is that the judge did state reasons for the underlying issues which High High is raising now with respect to Georgia Pacific and Reed, which is the thrust of the appeal here. With respect to the Rule 60B decision, the judge did not issue a separate decision. We had an oral argument on the contempt motion in relation to High High's conduct and the 60B motion on the same day and the judge issued a summary decision denying it. The case law says that the court can uphold the judgment on any basis that's in the record. We think that the legal basis that High High has argued to the court are erroneous in and of themselves and the decision explains why. But there are additional reasons why the district court acted within its discretion in refusing the 60B application. First of all, in order to bring a motion under Rule 60B, the movement has to show diligence. That's very clear. Here, the decision which they're challenging is really the September 30th, 2011 ongoing royalties order. They waited nine months to challenge that and when they did challenge it, it was only after we had filed a contempt motion, after having caught them, and they put up their hands and they say, okay, we give up, we are the successors. That's not the kind of diligence which is contemplated by Rule 60B. High High was not a stranger to these proceedings. They were following the case closely. Two of their – they had multiple board members on the Interlops board and they were cooperating with Interlops throughout the process. It's very clear that they made a conscious decision not to participate in the litigation, not to admit that they were successors, and to hope that either Interlops would defeat the judgment or that they would litigate for years or that we would give up or something would happen, but it didn't work out that way. And so they didn't file a direct appeal, and instead what they did is they filed a Rule 60B motion. In order to prevail on that, they have to first show diligence, then they have to meet one of the – Could they have filed a direct appeal, and if so, by what procedural mechanism? I believe they could, Your Honor. In Closter Steele, which was a case involving successors and assigns, the court said that the successor, having been bound by the judgment when the judgment was issued, injunction was issued in that case, it said successors are bound. The court said that the successors, as parties of interest being bound by the injunction, could have appealed even though they weren't parties to the case. They also could have formally intervened. The procedure here was a little odd. They were in the case, then the judge gave a different docket number to the ongoing royalties case, and we went forward. But if they had wanted to challenge it, challenge the royalty rate when they knew that they were buying the business, as Your Honor pointed out, they certainly knew what was going on. They could have come back into the case. They never actually filed a formal intervention motion at all in this case. They just reappeared, and here we are. So they certainly had time to reenter the litigation, make any points that they wanted to make, and take a direct appeal. And had they done that when I was here before, before two of Your Honors, on the appeal with Intelox, we would have had these issues all vetted and resolved. But they didn't do that, and so now we're here on 60B. And on 60B, they have to point to one section of the rule, and they have to establish the legal right to relief. Under 60B.1, they are proceeding under the stake section of 60B.1, which requires, under the Fifth Circuit law, a fundamental error, more than an arguable point of law, something that's fundamental. They simply can't meet that burden. Under Rule 60B.5, they have to show a change in the law or the facts, and neither of those have been sustained here. So for those reasons, we don't believe— What about the obvious error in law? I mean, are you defending the view that you can do this under weed, willfulness, and then compound the damages, or are you suggesting an alternative? We believe what the district court did was correct, and that any objection to that was waived. But what the district court did in this case was clearly correct under the law by assigning some measure of the damages to willfulness. There's been several cases in this court, including the Syncourt case in March, the Bard case, and numerous district courts, all of which have considered willfulness in one way or another in evaluating ongoing royalties. It's certainly not—that is the right way to approach ongoing royalties, which in effect are really a substitute for having a second case. If you didn't have— Can I just double-check? I mean, has this court actually ruled on an issue about whether willfulness can play a role in the specification of the amount of an ongoing royalty? My recollection is that that was in fact not an issue in Bard. In the Bard case, there was a Bard I and a Bard II, and the district court case issued an award of that. I know it was an issue in the district court. What I'm saying is I'm not remembering that it was an issue. In footnote 1 of Bard II, there's a statement that says that we uphold the ongoing royalty award and would do so even if willfulness had not been found in the original case. And the district court in that case had found willfulness going forward and awarded ongoing royalty damages. Also, in the— Even if willfulness had—I'm sorry. I'm sorry. Even if willfulness had not been found in the original case. Correct. Yeah, but that's a different question than I think Judge Taranto is focusing on. Even if there's no willfulness below, whether or not you oppose those damages in the future. My understanding of the footnote was what the court was saying is the district court found that it would be willful going forward in order for them to infringe. And that assessed increased damages as a result. In Bard II, in the footnote, the court said we're reversing on a number of other grounds, but we're not upsetting the ongoing royalty award, which we would find appropriate in this case, even if there hadn't been any willfulness in the underlying action, in the pre-verdict period. So the court was saying even if there was no willfulness in the pre-verdict period, we'd accept a willfulness enhancement for the post-verdict period. Similarly, in the Sinclair case, the court accepted for ongoing royalties before the entry of a permanent injunction that the damages could be enhanced. And in principle, there's no difference between royalties accruing in the post-verdict period through the entry of a permanent injunction barring sale and ongoing royalties through the life of patent. Can I ask you about one piece? Judge Ward had a paragraph about how the Inalux official, I don't know what level of official, made some remarks that Judge Ward thought were disrespectful of the patent system. Suppose I thought that that was not a very sound basis for increasing an amount. What effect would that have here? It wouldn't have any effect. Judge Ward stated in his opinion that he would have found – he would have reached the same result, I believe, and I believe that he would have. But we can't challenge that now because the decision was made by Inalux to agree to this procedure, and the procedure was followed. And Judge Ward's view on that would be considered under the peace of discretion standard before reaching a final judgment. And after a final judgment, it's effectively unreviewable. Thank you, Mr. Black. Mr. Weed has about two and a half minutes rebuttal time. Thank you, Your Honor. Your Honor, starting with the Bard case, I think it's important to recognize if you look at the district court's opinion, there is no mention in the district court of the Reed v. Portek case, the Reed factors. There's no discussion of willfulness going forward. The court does say, yes, the party is voluntarily choosing to continue, but there's not an enhancement based on willfulness. The mere fact that the royalty rate that was set by the district court was higher does not mean that it was enhanced because of willfulness. So I don't think the Bard case stands for the proposition that a willfulness enhancement is appropriate in an ongoing royalty. Similarly, in the Syncourt case, the Syncourt case quite clearly states at page 1385 of the opinion that what was at issue there was an award of damages under Section 284 for the time period between the verdict and the imposition of the permanent injunction. So there's no question that under 284, the court has the authority to enhance a royalty amount. And so the Syncourt case, again, provides no support or guidance for a willfulness enhancement in the context of an ongoing royalty. With regard to the alleged delay on the part of Hon Hai, again, I think it's important to consider the timeline here. We don't have an opinion saying that successors and assigns will be bound until April 30th. At that point, in April and in May, Mondes is still taking the position that Hon Hai is a new entrant. They said that to Hon Hai in correspondence. And on May 24th, three weeks in a few days after there's finally an order, they sued Hon Hai as a new entrant. So in retrospect, to say, well, Hon Hai should have known it was a successor, despite the fact that Mondes was taking the position, despite the fact that both Mondes and the district court, as Mondes admits in page 43 of their brief, knew all these facts but never tried to include Hon Hai as a named party in the court's order. To say that Hon Hai alone should have known that it somehow should have been involved and that this may be an issue, I think is hindsight and an unfair imposition on Hon Hai. If the court has no further questions, I thank you. Thank you, Mr. Lee. We'll take the case under review. Thank you. Thank you.